FILED US District Court-UT
DEC 07 '22 PM 02:28

TRINA A. HIGGINS, United States Attorney (#7349)
JAMIE Z. THOMAS, Assistant United States Attorney (#9420)
JENNIFER K. MUYSKENS, Assistant United States Attorney (DC#475353)
CY H. CASTLE, Assistant United States Attorney (#4808)
Attorneys for the United States of America
Office of the United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
Telephone: (801) 524-5682

SEALED

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA, | INDICTMENT |
| Plaintiff, | COUNT 1: 18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud) |
| vs. | COUNT 2: 18 U.S.C. § 1349 (Conspiracy to Commit Bank Fraud) |
| APRIL GREN BAWDEN, CHAD AUSTIN BAWDEN, MAKAIO LYMAN CRISLER, PHILLIP GANNUSCIA, DUSTIN GARR, BARBARA JO JACKSON, BRENT GOLDBURN KNUDSON, ROBERT MCKINLEY, and RICHARD SCOTT NEMROW, | COUNT 3: 18 U.S.C. § 1956(h) (Conspiracy to Commit Money Laundering) |
| | COUNTS 4-9: 18 U.S.C. § 1343 (Wire Fraud) |
| Defendants. | COUNTS 10-15: 18 U.S.C. § 1028A (Aggravated Identity Theft) |
| | COUNTS 16-18: 18 U.S.C. §§ 1957 (Money Laundering) and 2(a)-(b) (Aiding and Abetting) |

Case: 2:22-cr-00481
Assigned To : Waddoups, Clark
Assign. Date : 12/6/2022

The Grand Jury Charges:

### Overview of the Scheme

1.     From at least in or around January 2016, and continuing through in or around April 2022, APRIL GREN BAWDEN, CHAD AUSTIN BAWDEN, MAKAIO LYMAN CRISLER, PHILLIP GANNUSCIA, DUSTIN GARR, BARBARA JO JACKSON, BRENT GOLDBURN KNUDSON, ROBERT MCKINLEY, and RICHARD SCOTT NEMROW (collectively, the "DEFENDANTS"), and others whose identities are known and unknown to the Grand Jury, engaged in interrelated fraud and money laundering conspiracies to obtain more than $100,000,000 of credit and debit card processing from financial institutions and payment processors.

2.     The scheme involved the sale of nutraceutical, CBD, and dietary supplement products to consumers through a number of websites and a call center operating in Utah. All of the sales required the consumer to provide a credit or debit card, which card was billed through a credit or debit card processing transaction.

3.     The nutraceutical, CBD, and dietary supplement products were advertised to consumers as providing benefits such as weight loss and the treatment of seizures, cancers, and erectile dysfunction, and included false claims about the products' effectiveness and false celebrity endorsements. Consumers were also misled about the price of products and the ability to return or to obtain a refund for the product.

4.     The sale of nutraceutical, CBD, or dietary supplement products is considered high risk for financial institutions and payment processors who process credit

card transactions ("Merchant Processors") because of the large numbers of chargebacks, liability associated with consumer use of the products, potential false marketing often associated with these products, the potential of facilitating or funding criminal activity, and potential reputational and financial harm to the Merchant Processor. Merchant Processors attempt to limit their risk and liability in relation to these types of high-risk businesses by engaging in underwriting and other practices before and after a merchant account is opened.

5.      In an effort to avoid the risk-mitigating actions taken by Merchant Processors and to facilitate the tens of thousands of misleading online sales transactions to acquire more than $100,000,000, the DEFENDANTS set up and used hundreds of websites, and set up hundreds limited liability companies (LLCs), hundreds of business checking accounts, and hundreds of merchant processing accounts in the names of others, but which the DEFENDANTS controlled. The DEFENDANTS recruited and paid individuals (herein "straw owners") for the use of their personal information to create sham LLCs, and open business checking accounts and merchant processing accounts for the sham LLCs through which the DEFENDANTS processed the sales of their products and transferred the proceeds to benefit themselves and others involved in the scheme.

6.      In total, the DEFENDANTS obtained more than $100,000,000 from the scheme, which included money transferred and laundered through the sham LLCs' bank accounts. The proceeds of the scheme were used to further the scheme (*e.g.,* pay

overhead and labor costs), and to fund the lifestyles of the DEFENDANTS. In addition to the millions of dollars benefiting the DEFENDANTS, more than $64,000,000 of the scheme proceeds were transferred overseas.

### Relevant Persons and Entities

At all times relevant to this Indictment:

7.     APRIL GREN BAWDEN ("A. BAWDEN") was a resident of Salt Lake County, Utah. A. BAWDEN controlled Total Client Connect. A. BAWDEN also recruited straw owners.

8.     CHAD AUSTIN BAWDEN, also known as Austin Bawden ("C. BAWDEN"), was a resident of Salt Lake County, Utah. C. BAWDEN controlled Total Client Connect. C. BAWDEN also recruited straw owners.

9.     MAKAIO LYMAN CRISLER, also known as Lyman Crisler ("CRISLER"), was a resident of Utah County, Utah. CRISLER controlled Target Fulfillment LLC and Energia, LLC, and was the registered agent for both entities.

10.     PHILLIP GANNUSCIA ("GANNUSCIA") was a resident of Salt Lake County, Utah, and/or Puerto Rico. GANNUSCIA was employed by Target Fulfillment LLC as the Vice President of Business Development. In April 2018, GANNUSCIA was permanently enjoined by the Federal Trade Commission from, among other things, making or assisting others in making any false or misleading statement to obtain payment processing services. The injunction also prohibited GANNUSCIA from engaging in any

tactics to avoid fraud and risk monitoring programs by any Merchant Processor,
including tactics such as balancing or distributing sales transactions among multiple
merchant accounts or using shell companies to apply for a merchant account.

11.     DUSTIN GARR ("GARR") was a resident of Washington County, Utah.
GARR controlled the software used in the scheme and employed individuals participating
in the scheme.

12.     BARBARA JO JACKSON, also known as Bobby Jo Jackson, Bobby
Jackson, and Barbara Jones ("JACKSON"), was a resident of Utah County, Utah.
JACKSON recruited straw owners for the scheme, and controlled Continental Orient
LLC.

13.     BRENT GOLDBURN KNUDSON ("KNUDSON") was a resident of Utah
County, Utah. KNUDSON managed the merchant processing applications for the
scheme.

14.     ROBERT MCKINLEY ("MCKINLEY") was a resident of Spokane,
Washington. MCKINLEY assisted in the marketing of products to consumers in the
scheme.

15.     RICHARD SCOTT NEMROW, also known as Scott Nemrow
("NEMROW"), was a resident of Utah County, Utah. NEMROW controlled Target
Fulfillment LLC. In April 2018, NEMROW was permanently enjoined by the Federal
Trade Commission from, among other things, making or assisting others in making any

false or misleading statement to obtain payment processing services. The injunction also prohibited NEMROW from engaging in any tactics to avoid fraud and risk monitoring programs by any Merchant Processor, including tactics such as balancing or distributing sales transactions among multiple merchant accounts or using shell companies to apply for a merchant account.

16.     Total Client Connect is a Utah registered DBA for Elite Business Resources LLC, which is a Utah domestic limited liability company. Total Client Connect is the entity through which the DEFENDANTS operated their call center in Utah.

17.     Target Fulfillment LLC ("Target Fulfillment") was registered in Utah as a foreign limited liability company, with its principal place of business located in Utah. Target Fulfillment was the entity that fulfilled and managed the sales of the products in the scheme. Target Fulfillment used several bank accounts at Rock Canyon Bank including account xxx-3919.

18.     Energia LLC ("Energia") was a Utah domestic limited liability company. Energia was an entity that layered proceeds from the scheme.

19.     Control Marketing LLC ("Control Marketing") was a Utah domestic limited liability company. Control Marketing was an entity that that layered proceeds from the scheme.

20.     Continental Orient LLC ("Continental Orient") was Utah domestic limited liability company. Continental Orient was an entity that layered proceeds from the scheme.

### The Payment Processing Industry

21.     In order to accept payment cards (*i.e.*, credit and debit cards) from customers purchasing goods and services, a business is required to complete a merchant processing application to establish a merchant account with a sponsoring bank that is a member of the "Credit Card Networks" (*e.g.*, Visa, Mastercard, American Express, and Discover) that authorize merchants to accept payments through the payment card system.

22.     The Credit Card Networks established rules to protect consumers, to comply with anti-money laundering statutes, to reduce the financial risks associated with chargebacks and fraud, and to preserve the integrity of the payment system. A chargeback is the return to the consumer of credit card funds used by the consumer to make a purchase. Among the rules was the requirement that truthful information be provided to Merchant Processors to determine whether to open a merchant account to process credit and debit card transactions.

23.     Merchant Processors will often perform underwriting to aid in deciding whether to open a merchant account, particularly when high risk transactions are involved. Merchant Processors will also often limit the volume of sales transactions that can be processed through a single merchant account, particularly when high risk

transactions are involved.

24.     Once a merchant account is opened, the merchant's sales transactions are monitored for atypical processing volumes, excessive chargebacks or fraud, and other indications of prohibited transactions. A merchant account will be shut down when the chargeback rate reaches a certain level, or there are other concerns about the account and how it is being used.

## The Scheme to Defraud

25.     From at least in or around January 2016, and continuing through in or around April 2022, the DEFENDANTS and others whose identities are known and unknown to the Grand Jury, knowingly devised and executed a scheme and artifice to defraud, to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and omissions of material facts.

26.     In executing and attempting to execute the scheme and artifice to defraud, and in furtherance thereof, the DEFENDANTS, alone and in combination with others whose identities are known and unknown to the Grand Jury:

    a.  Prepared and submitted materially false applications to open merchant accounts for sham LLCs, which accounts were controlled by the DEFENDANTS;

    b.  Created and used email addresses, electronic signatures, and other personal identifying information of straw owners to further the DEFENDANTS'

efforts to open and maintain merchant accounts to further and to conceal the scheme; and

c. Used bank accounts in the names of sham LLCs to collect and transfer money to other bank accounts for the DEFENDANTS' benefit and use.

27.    It was the object of the scheme and artifice to defraud for the DEFENDANTS to obtain money through credit and debit card processing from Merchant Processors by engaging in misleading and deceptive marketing and sales practices targeting consumers.

28.    It was part of the scheme to defraud that DEFENDANTS were involved in the on-line and phone solicitation sales of nutraceutical, CBD, and dietary supplement products. The products were advertised to consumers as providing certain health or weight loss benefits, and included false claims about the products' effectiveness and false celebrity endorsements. Consumers were also misled about the price of products and the ability to return or to obtain a refund for the product. As a result of the misleading and fraudulent practices: consumers were enrolled in monthly subscriptions without their knowledge or consent; consumers were charged more than the advertised price for the product; consumers received and were charged for more product than they ordered; consumers were unable to obtain a refund for or to return the product; and consumers were upsold on other products when attempting to obtain a refund. The misleading and fraudulent practices also resulted in several million dollars of chargebacks due to

9

consumers disputing a charge as unauthorized or fraudulent.

29.    The sale of nutraceutical, CBD, or dietary supplement products is considered high risk for Merchant Processors because of the large numbers of chargebacks, liability associated with consumer use of the products, potential false marketing often associated with these products, the potential of facilitating or funding criminal activity, and potential reputational and financial harm to the Merchant Processor. Merchant Processors attempt to limit their risk and liability in relation to these types of high-risk businesses by engaging in the following practices: maintaining a list of businesses and their owners who have had merchant processing accounts closed due to reports of fraud, money laundering, and/or a high rate of chargebacks; conducting an underwriting process before opening merchant processing accounts; and limiting the volume of sales transactions that can be processed through a single high-risk business merchant account.

30.    It was part of the scheme that, in an effort to avoid the risk-mitigating actions taken by Merchant Processors, the DEFENDANTS set up hundreds of limited liability companies (LLCs), and caused the opening of hundreds business checking accounts, and hundreds of merchant processing accounts in the names of the sham LLCs and straw owners, but which the DEFENDANTS controlled. The DEFENDANTS recruited the straw owners to create sham LLCs. The DEFENDANTS caused business checking accounts and merchant processing accounts to be opened for the sham LLCs

through which the DEFENDANTS processed the sales of their products and transferred

the proceeds to benefit themselves and others involved in the scheme. The straw owners

were paid a nominal amount, usually $250-$350/month, as long as their merchant

account remained open. The straw owners did nothing to operate the businesses, made no

decisions related to the businesses, and had little to no knowledge of the businesses.

Without the straw owners and the sham LLCs, bank accounts and merchant processing

accounts, the DEFENDANTS could not have billed credit or debit cards and could not

have conducted online and over-the-phone transactions – that is, the DEFENDANTS

could not have obtained money from the scheme.

  31. It was part of the scheme that the DEFENDANTS submitted falsified

merchant applications in the names of sham LLCs. The merchant applications falsified

material information relevant to the decisions of federally insured financial institutions

and payment processors to issue payment card processing services and make payments to

the sham LLCs. The merchant applications falsified the name and nature of the

underlying business, and concealed the relationship between the sham LLCs and the

DEFENDANTS.

  32. It was further part of the scheme that, in addition to the false and

misleading merchant account applications, the DEFENDANTS created and submitted to

Merchant Processors hundreds of websites that acted as "false storefronts" for the sham

LLCs. These websites did not process sales from consumers and did not contain the same

misleading advertising as the websites directed at consumers. The websites were designed to avoid detection of the scheme during the underwriting process by making the sham LLCs appear to be legitimate operating businesses that were not engaged in misleading or deceptive practices.

33.     It was further part of the scheme that the DEFENDANTS regularly manipulated sales transactions to keep the merchant accounts for the sham LLCs open as long as possible. Merchant accounts were suspended or closed by Merchant Processors when the percentage of transactions resulting in chargebacks was too high. The DEFENDANTS conducted thousands of false sales transactions using prepaid gift cards to lower the chargeback rate in an effort to keep the merchant accounts open. The DEFENDANTS referred to these false sales transactions as "friendlies." A typical "friendly" transaction involved the use of a prepaid gift card for a low dollar "sale" of a product. The consumer information for the "sale" was falsified and no product was shipped or provided to anyone.

34.     It was further part of the scheme that the DEFENDANTS customized and used a customer relationship management software program ("CRM") to further and to conceal the scheme. Specifically, the CRM aided the DEFENDANTS by distributing sales of products across multiple merchant accounts in the names of the sham LLCs. The CRM was also designed to aid in the processing of "friendly" transactions. The CRM was modified to inform the DEFENDANTS when a sale of product was attempted or made

through one of the false storefront websites submitted to Merchant Processors so the DEFENDANTS could take additional steps to conceal their scheme. The CRM was also modified to allow the DEFENDANTS to manipulate the on-line websites through which they made sales to consumers. Specifically, the CRM allowed the DEFENDANTS to "hide" pricing and subscription information so that consumers were not able to see that, by purchasing a product on the website, they were automatically enrolled in a subscription service that charged their credit and debit cards on a recurring basis.

35.    It was part of the scheme that the DEFENDANTS used Target Fulfillment to further the scheme, and used that entity to conceal the role played by NEMROW and GANNUSCIA in the scheme as a result of the permanent injunction imposed by the Federal Trade Commission. Target Fulfillment processed the sales orders from consumers and used the CRM to distribute sales across multiple merchant accounts to further and conceal the scheme. In addition, bank accounts controlled by Target Fulfillment were used to "layer" proceeds from the scheme to benefit the DEFENDANTS.

36.    It was part of the scheme that the DEFENDANTS used a call center in Utah to further and to conceal the scheme. Consumers were directed to the call center for complaints and other customer service issues. Employees at the call center used the telephone to answer interstate telephone calls from consumers, and also sold products to consumers using false claims of effectiveness and misleading sales practices.

37.     It was further part of the scheme that the DEFENDANTS used bank accounts belonging to Control Marketing, Continental Orient, and Energia to act as "layering" accounts to further and conceal their scheme. "Layering" occurs when illegal proceeds are moved around in a series of bank transfers or financial transactions to conceal the origin of the funds. The bank accounts in the names of the sham LLCs received the money paid from the Merchant Processors. The DEFENDANTS regularly transferred the money in the sham LLC bank accounts to accounts belonging to Control Marketing, Continental Orient, Energia. These "layering" accounts received more than $100,000,000 in illegal proceeds from the straw LLCs and subsequently wired or transferred those proceeds to other accounts controlled by the DEFENDANTS for the purpose of furthering their business and for their own personal benefit, to include the purchase of homes, vehicles, a boat, and cosmetic surgery. These "layering" accounts also participated in the transfer of more than $64,000,000 overseas to accounts held in foreign countries.

## COUNT 1
18 U.S.C. § 1349
(Conspiracy to Commit Wire Fraud)

38.     The factual allegations contained in paragraphs 1 – 37 of this Indictment are realleged and incorporated as if fully set forth herein.

39.     From at least in or around January 2016, and continuing through in or around April 2022,

APRIL GREN BAWDEN, CHAD AUSTIN BAWDEN, MAKAIO
LYMAN CRISLER, PHILLIP GANNUSCIA, DUSTIN GARR,
BARBARA JO JACKSON, BRENT GOLDBURN KNUDSON, ROBERT
MCKINLEY, and RICHARD SCOTT NEMROW,

DEFENDANTS herein, and others whose identities are known and unknown to the

Grand Jury, did knowingly and willfully combine, conspire, confederate, and agree

together and with each other, with interdependence among the members of the

conspiracy, to commit Wire Fraud in violation of Title 18, United States Code, Section

1343.

      40.    It was the purpose and object of the conspiracy for the DEFENDANTS and

others whose identities are known and unknown to the Grand Jury, willfully and

knowingly, having devised and intending to devise a scheme and artifice to defraud, and

for obtaining money and property by means of false and fraudulent pretenses,

representations, and promises, would and did transmit and cause to be transmitted by

means of wire, radio, and television communication in interstate and foreign commerce,

writings, signs, signals, pictures, and sounds for the purpose of executing such scheme

and artifice, in violation of Title 18 United States Code, Section 1343, to wit,

DEFENDANTS engaged in a scheme to create sham LLCs for purpose of submitting

falsified merchant processing applications to obtain payment card processing services and

to obtain more than $100 million from federally insured financial institutions, which

scheme involved the use of interstate wires, including interstate wires into and out of the

District of Utah and elsewhere.

41.     The manner and means by which the DEFENDANTS and others whose identities are known and unknown to the Grand Jury, alone and in combination, sought to accomplish the objects and purpose of the conspiracy included, among other things, the following:

    a.  Soliciting straw owners to open bank accounts and sham LLCs for the purpose of using those sham LLCs to apply for merchant accounts. In return for the use of their personal information, straw owners were given a small monthly compensation as long as the merchant account remained open;

    b.  Preparing and submitting fraudulent merchant applications for each of the straw LLCs. Those merchant applications falsely described the purported business to make them look like legitimate independent businesses, and make it more likely that the associated merchant account would be approved for processing. The merchant applications also concealed the sham LLCs' true association with the DEFENDANTS;

    c.  Causing bank accounts to be opened for each sham LLC in order to obtain transaction payments from federally insured financial institutions. The bank accounts were controlled by the DEFENDANTS and not by the straw owners and sham LLCs on whose behalf the accounts were purportedly opened; and

d.  Creating false storefront websites through which the sham LLCs purported

to sell products, and submitting those websites to Merchant Processors

during the application and/or underwriting process, which concealed the

true prohibited and high-risk transactions engaged in by the

DEFENDANTS.

42.  On or about the dates set forth below, within the District of Utah and

elsewhere, the DEFENDANTS and others whose identities are known and unknown to

the Grand Jury, caused the following straw accounts to be opened pursuant to falsified

merchant applications submitted via interstate wires, in order to process credit and debit

card transactions for their high-risk sales of nutraceuticals, CBD, and dietary

supplements:

| Overt Act | Date Submitted (on or about) | Merchant Processor | Shell LLC | Straw Owner | False Item(s) |
|---|---|---|---|---|---|
| A | 4/25/2020 | ChargeSavvy | Envision Wellbeing, LLC dba My Wellness Rebound | C.A. | LLC information and signature of C.A. |
| B | 4/25/2020 | ChargeSavvy | Infinite Nutrasupp, LLC dba My Infinite Improvement | A.A. | LLC information and signature of A.A. |
| C | 5/11/2020 | ChargeSavvy | Envision Wellbeing, LLC dba Pure Transformation Today | C.A. | LLC information and signature of C.A. |
| D | 5/11/2020 | ChargeSavvy | Infinite Nutrasupp, LLC dba Simple Vital Wellness | A.A. | LLC information and signature of A.A. |

| E | 3/29/2021 | National Merchants Association | Divine Health, LLC dba Increased Wellness | J.G. | LLC information and signature of J.G. |
| F | 6/25/2021 | Atlantic-Pacific Processing Systems | Divine Health, LLC | J.G. | LLC information and signature of J.G. |

All in violation of 18 U.S.C. § 1349.

## COUNT 2
18 U.S.C. § 1349
(Conspiracy to Commit Bank Fraud)

43.    The factual allegations contained in paragraphs 1 – 42 of this Indictment are realleged and incorporated as if fully set forth herein.

44.    From at least in or around January 2016, and continuing through in or around April 2022,

APRIL GREN BAWDEN, CHAD AUSTIN BAWDEN, MAKAIO LYMAN CRISLER, PHILLIP GANNUSCIA, DUSTIN GARR, BARBARA JO JACKSON, BRENT GOLDBURN KNUDSON, ROBERT MCKINLEY, and RICHARD SCOTT NEMROW,

DEFENDANTS herein, and others whose identities are known and unknown to the Grand Jury, did knowingly and willfully combine, conspire, confederate, and agree together and with each other, with interdependence among the members of the conspiracy, to commit Bank Fraud in violation of Title 18, United States Code, Section 1344.

45.    It was the purpose and object of the conspiracy for the DEFENDANTS and others whose identities are known and unknown to the Grand Jury, willfully and

knowingly, having devised and intending to devise a scheme and artifice to defraud

financial institutions as defined in 18 U.S.C. § 20, or to obtain money, funds, credits,

assets, securities, and other property owned by, and under the custody and control of the

financial institutions, by means of false and fraudulent pretenses, representations, and

promises, and omissions, and for obtaining money and property by means of false and

fraudulent pretenses, representations, and promises, did provide or cause to be provided

to financial institutions fraudulent merchant account applications documents, forged

signatures, and false communications

46.    The manner and means by which the DEFENDANTS and others whose

identities are known and unknown to the Grand Jury, alone and in combination, sought to

accomplish the objects and purpose of the conspiracy included, among other things, the

following:

    a.  Soliciting straw owners to open bank accounts and sham LLCs for the

        purpose of using those sham LLCs to apply for merchant accounts. In

        return for the use of their personal information, straw owners were given a

        small monthly compensation as long as the merchant account remained

        open;

    b.  Preparing and submitting fraudulent merchant applications for each of the

        straw LLCs. Those merchant applications falsely described the purported

        business to make them look like legitimate independent businesses, and

make it more likely that the associated merchant account would be approved for processing. The merchant applications also concealed the sham LLCs' true association with the DEFENDANTS;

c. Causing bank accounts to be opened for each sham LLC in order to obtain transaction payments from federally insured financial institutions. The bank accounts were controlled by the DEFENDANTS and not by the straw owners and sham LLCs on whose behalf the accounts were purportedly opened; and

d. Creating false storefront websites through which the sham LLCs purported to sell products, and submitting those websites to Merchant Processors during the application and/or underwriting process, which concealed the true prohibited and high-risk transactions engaged in by the DEFENDANTS.

47.    On or about the dates set forth below, within the District of Utah and elsewhere, the DEFENDANTS and others whose identities are known and unknown to the Grand Jury, caused the following straw accounts to be opened pursuant to falsified merchant applications submitted via interstate wires, in order to process credit and debit card transactions for their high-risk sales of nutraceuticals, CBD, and dietary supplements:

| Overt Act | Date Submitted (on or about) | Merchant Processor | Shell LLC | Straw Owner | False Item(s) |
|---|---|---|---|---|---|
| A | 4/25/2020 | ChargeSavvy | Envision Wellbeing, LLC dba My Wellness Rebound | C.A. | LLC information and signature of C.A. |
| B | 4/25/2020 | ChargeSavvy | Infinite Nutrasupp, LLC dba My Infinite Improvement | A.A. | LLC information and signature of A.A. |
| C | 5/11/2020 | ChargeSavvy | Envision Wellbeing, LLC dba Pure Transformation Today | C.A. | LLC information and signature of C.A. |
| D | 5/11/2020 | ChargeSavvy | Infinite Nutrasupp, LLC dba Simple Vital Wellness | A.A. | LLC information and signature of A.A. |
| E | 3/29/2021 | National Merchants Association | Divine Health, LLC dba Increased Wellness | J.G. | LLC information and signature of J.G. |
| F | 6/25/2021 | Atlantic-Pacific Processing Systems | Divine Health, LLC | J.G. | LLC information and signature of J.G. |

All in violation of 18 U.S.C. § 1349.

## COUNT 3

18 U.S.C. § 1956(h)

(Conspiracy to Commit Money Laundering)

48.    The factual allegations contained in paragraphs 1 – 47 of this Indictment are realleged and incorporated as if fully set forth herein.

49.    From at least in or around January 2016, and continuing through in or around April 2022,

APRIL GREN BAWDEN, CHAD AUSTIN BAWDEN, MAKAIO
LYMAN CRISLER, PHILLIP GANNUSCIA, DUSTIN GARR,
BARBARA JO JACKSON, BRENT GOLDBURN KNUDSON, ROBERT
MCKINLEY, and RICHARD SCOTT NEMROW,

DEFENDANTS herein, and others whose identities are known and unknown to the

Grand Jury, did knowingly and willfully combine, conspire, confederate, and agree

together and with each other, with interdependence among the members of the

conspiracy, to:

(a) conduct financial transactions affecting interstate and foreign commerce, which

transactions involved the proceeds of specified unlawful activity, that is, Wire Fraud,

knowing that the transactions were designed in whole and in part to conceal and disguise

the nature, location, source, ownership, and control of the proceeds of specified unlawful

activity, and that while conducting and attempting to conduct such financial transactions,

knew that the property involved in the financial transactions represented the proceeds of

some form of unlawful activity, contrary to Title 18, United States Code, Section

1956(a)(1)(B)(i); and

(b) engage in monetary transactions by, through and to a financial institution,

affecting interstate and foreign commerce, in criminally derived property of a value

greater than $10,000, such property having been derived from a specified unlawful

activity, that is Conspiracy to Commit Wire Fraud, Conspiracy to Commit Bank Fraud,

and Wire Fraud, contrary to Title 18, United States Code, Section 1957(a).

50.     It was the purpose and object of the conspiracy for the DEFENDANTS and others whose identities are known and unknown to the Grand Jury, to conceal and disguise the nature, location, source, ownership, and control of proceeds from the Conspiracies to Commit Wire Fraud and Bank Fraud, in violation of Title 18, United States Code, Section 1349, and Wire Fraud in violation of Title 18, United States Code, Section 1343. It was also the purpose and object of the conspiracy to further the schemes and to illegal enrich the DEFENDANTS and others.

51.     The manner and means by which the DEFENDANTS and others whose identities are known and unknown to the Grand Jury, alone and in combination, sought to accomplish the objects and purpose of the conspiracy included, among other things, the following:

    a.  Caused the opening of hundreds of bank accounts in the names of the sham LLCs and/or the straw owners for the purpose of receiving the proceeds from the unlawful scheme, that is the Conspiracy to Commit Wire Fraud, Conspiracy to Commit Bank Fraud, and Wire Fraud. In each case, the DEFENDANTS controlled the sham LLC and the straw owner never had any role in operating the LLC, nor did any straw owner ever use or control these bank accounts. These bank accounts were controlled and used solely by the DEFENDANTS to receive and transfer more than $100,000,000 of fraudulent proceeds from their scheme;

b.  Used bank accounts controlled by Control Marketing, Continental Orient, Energia, and other entities to act as "layering" accounts to transfer proceeds from the scheme out of the sham LLC bank accounts;

c.  Used bank accounts controlled by Control Marketing, Continental Orient, Energia, and other entities to act as "layering" accounts to transfer proceeds from the scheme to other banks accounts controlled by the DEFENDANTS and others; and

d.  Engaged in monetary transactions of more than $10,000 derived from victims of the unlawful scheme, that is the Conspiracy to Commit Wire Fraud, Conspiracy to Commit Bank Fraud, and Wire Fraud, to and from accounts owned or controlled by the DEFENDANTS. These transactions included, but are not limited to: multiple monetary transfers in excess of $10,000 from March 2020 through May 2020 for the purchase of a $250,000 Nautique Paragon 25 boat and trailer; numerous transfers in excess of $10,000 to bank accounts in the United Arab Emirates, Bulgaria, and Austria; a June 2020 wire transfer of $150,517.37 for a Porsche 911 convertible; and a July 2021 wire transfer of $367,439.40 for a Lamborghini Urus.

All in violation of 18 U.S.C. § 1956(h).

## COUNTS 4-9
18 U.S.C. § 1343
(Wire Fraud)

52.      The factual allegations contained in paragraphs 1 – 51 of this Indictment are reavalleged and incorporated as if fully set forth herein.

53.      On or about the dates listed below, in the District of Utah and elsewhere,

APRIL GREN BAWDEN, CHAD AUSTIN BAWDEN, MAKAIO
LYMAN CRISLER, PHILLIP GANNUSCIA, DUSTIN GARR,
BARBARA JO JACKSON, BRENT GOLDBURN KNUDSON, ROBERT
MCKINLEY, and RICHARD SCOTT NEMROW,

DEFENDANTS herein, having devised and intended to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, promises, and omissions of material facts, for the purpose of executing a scheme and artifice to defraud, did cause to be transmitted by means of wire communication certain writings, signs and signals, that is, an interstate wire, as represented below, each such use of wire communication being a separate count of this Indictment:

| Count | Date Submitted (on or about) | Merchant Processor | Shell LLC | Straw Owner | Use of Interstate Wire |
|-------|------------------------------|--------------------|-----------|-------------|------------------------|
| 4 | 4/25/2020 | ChargeSavvy | Envision Wellbeing, LLC dba My Wellness Rebound | C.A. | DocuSign |
| 5 | 4/25/2020 | ChargeSavvy | Infinite Nutrasupp, LLC dba My Infinite Improvement | A.A. | DocuSign |

| 6 | 5/11/2020 | ChargeSavvy | Envision Wellbeing, LLC dba Pure Transformation Today | C.A. | DocuSign |
|---|---|---|---|---|---|
| 7 | 5/11/2020 | ChargeSavvy | Infinite Nutrasupp, LLC dba Simple Vital Wellness | A.A. | DocuSign |
| 8 | 3/29/2021 | National Merchants Association | Divine Health, LLC dba Increased Wellness | J.G. | Email |
| 9 | 6/25/2021 | Atlantic-Pacific Processing Systems | Divine Health, LLC | J.G. | Email |

All in violation of 18 U.S.C. § 1343.

## COUNTS 10-15
18 U.S.C. § 1028A
(Aggravated Identity Theft)

54.    The factual allegations contained in paragraphs 1 – 53 of this Indictment are realleged and incorporated as if fully set forth herein.

55.    On or about the dates set forth below, in the District of Utah and elsewhere,

APRIL GREN BAWDEN, CHAD AUSTIN BAWDEN, MAKAIO
LYMAN CRISLER, PHILLIP GANNUSCIA, DUSTIN GARR,
BARBARA JO JACKSON, BRENT GOLDBURN KNUDSON, ROBERT
MCKINLEY, and RICHARD SCOTT NEMROW,

DEFENDANTS herein, during and in relation to a felony violation, to wit, Wire Fraud in

violation of 18 U.S.C. § 1343, knowingly attempted to and did, without lawful authority,

transfer, possess and use a means of identification of another person, each instance

described below being a separate violation of Title 18, United States Code, Section 1028A:

| Count | Date (on or about) | Means of Identification | Predicate Count(s) |
|-------|--------------------|-------------------------|--------------------|
| 10 | 4/25/2020 | Name, DOB, SSN, and forged signature of C.A. | 4 |
| 11 | 4/25/2020 | Name, DOB, SSN, and forged signature of A.A. | 5 |
| 12 | 5/11/2020 | Name, DOB, SSN, and forged signature of C.A. | 6 |
| 13 | 5/11/2020 | Name, DOB, SSN, and forged signature of A.A. | 7 |
| 14 | 3/29/2021 | Name, DOB, SSN, and forged signature of J.G. | 8 |
| 15 | 6/25/2021 | Name, DOB, SSN, and forged signature of J.G. | 9 |

All in violation of 18 U.S.C. § 1028A(a)(1).

## COUNTS 16-18
18 U.S.C. §§ 1957 and 2(a) and (b)
(Money Laundering)

56.    All of the factual allegations set forth in this Indictment are incorporated by

reference and realleged as though fully set forth herein.

57.    On or about the following dates, in the District of Utah and elsewhere, the

following defendant(s), did knowingly engage and attempt to engage in the following

monetary transactions involving funds that were proceeds of criminally derived property

of a value greater than $10,000, and were derived from a specified unlawful activity, that

is, Conspiracy to Commit Wire Fraud, Conspiracy to Commit Bank Fraud, and Wire Fraud,

as alleged in this Indictment:

| COUNT | DATE (on or about) | MONETARY TRANSACTIONS | Defendant(s) |
|---|---|---|---|
| 16 | 3/11/2020 | $37,5000 wire transfer from TARGET FULFILLMENT LLC's Rock Canyon Bank account xxx-3919 related to the purchase of a 2021 Nautique Paragon 25 boat and trailer | CRISLER |
| 17 | 6/29/2020 | $150,517.37 wire transfer from Key Bank account xxx-2704 controlled by GANNUSCIA's wife for the purchase of a 2020 Porsche 911 convertible | GANNUSCIA |
| 18 | 7/2/2021 | $367,439.40 wire transfer from TARGET FULFILLMENT LLC's Rock Canyon Bank account xxx-3919 for the purchase of a Lamborghini Urus | NEMROW and CRISLER |

All in violation of 18 U.S.C. §§ 1957 and Section 2(a) and 2(b).


## NOTICE OF INTENT TO SEEK FORFEITURE

Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), upon conviction of

any offense charged herein in violation of 18 U.S.C. § 1334 and or § 1349,

DEFENDANTS shall forfeit to the United States all property, real or personal, that

constitutes or is derived from proceeds traceable to the scheme to defraud or conspiracy

commit the same. The property to be forfeited includes, but is not limited to, the

following:

- All funds in account ending 2846 in the name of Target Fulfillment, LLC at Rock Canyon Bank;

- All funds in account ending 8710 in the name of Target Fulfillment, LLC at Rock Canyon Bank;

- All funds in account ending 8285 in the name of Energia, LLC at Central Bank;

- All funds in account ending 5277 in the name of Elite Business Resources, LLC at America First Credit Union;

- All funds in account ending 8372 in the name of Elite Business Resources, LLC at Chase Bank;

- Nautique Paragon 25 boat and trailer, VIN USCTC1R005E021;

- Porsche 911 convertible, VIN WP0CB2A96LS263604;

- Lamborghini Urus, VIN ZPBUA1ZL7MLA13133;

- A money judgment equal to the value of any property not available for forfeiture as a result of any act or omission of the defendant(s) for one or more of the reasons listed in 21 U.S.C. § 853(p); and

- Substitute property as allowed by 28 U.S.C. § 2461(c) and 21 U.S.C. § 853(p).

Pursuant to 18 U.S.C. § 982(a)(1), upon conviction of any offense charged herein

in violation of 18 U.S.C. § 1956(h), the defendant shall forfeit to the United States any

property, real or personal, involved in such offenses, and any property traceable to such

property. The property to be forfeited includes, but is not limited to, the following:

- All funds in account ending 2846 in the name of Target Fulfillment, LLC at Rock Canyon Bank;

- All funds in account ending 8710 in the name of Target Fulfillment, LLC at Rock Canyon Bank;

- All funds in account ending 8285 in the name of Energia, LLC at Central Bank;

- All funds in account ending 5277 in the name of Elite Business Resources, LLC at America First Credit Union;

- All funds in account ending 8372 in the name of Elite Business Resources, LLC at Chase Bank;

- Nautique Paragon 25 boat and trailer, VIN USCTC1R005E021;

- Porsche 911 convertible, VIN WP0CB2A96LS263604;

- Lamborghini Urus, VIN ZPBUA1ZL7MLA13133;

- A money judgment equal to the value of any property not available for forfeiture as a result of any act or omission of the defendant(s) for one or more of the reasons listed in 21 U.S.C. § 853(p); and

- Substitute property as allowed by 18 U.S.C. § 982(b) and 21 U.S.C. § 853(p).

GRAND JURY'S PROBABLE CAUSE FINDING REGARDING FORFEITURE

The grand jury finds probable cause to believe that the listed defendants have committed the crimes specified in the above forfeiture notice and that the above properties listed for forfeiture 1) constitute or are derived from proceeds traceable to the mail fraud conspiracy, or 2) are connected to the money laundering crimes as property.

A TRUE BILL:

_____

FOREPERSON OF GRAND JURY

TRINA A. HIGGINS
United States Attorney

_____

JAMIE Z. THOMAS
JENNIFER K. MUYSKENS
CY H. CASTLE
Assistant United States Attorneys